IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                                    CRIMINAL NO. 1:23cr153-LG-BWR

**WILLIE SPENCE MANNING, JR.**

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter comes before the Court on the [29] Motion to Suppress filed by Defendant Willie Spence Manning, Jr. The Government filed a [30] Response in opposition to the Motion. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the [29] Motion to Suppress should be denied because the breach of the safe fell within the scope of the search warrant. In addition, the Court finds that the good faith exception to the exclusionary rule applies.

### I.  FACTUAL BACKGROUND

On August 7, 2023, Hancock County Sheriff's Office Narcotics Division officers observed Manning selling Oxycodone tablets at the Corner Market Gas Station in Bay St. Louis, Mississippi. Agent Cotter and Commander Favre conducted a traffic stop on Manning's vehicle. Manning fled, crashed his vehicle on Webb Street, and then continued to flee on foot. While Manning was running, Cotter observed him take a clear plastic bag from his waistband and throw it into the grass. Manning was placed into custody for resisting arrest, and Cotter retraced his steps to locate the clear plastic bag. Manning's residence was secured by

members of the Bay St. Louis Police Department while waiting for a search warrant to be issued. The warrant authorized officers to search for controlled substances, "drug paraphernalia, illicit contraband, weapons, U.S. currency, drug ledgers, documents, articles of constructive possession, and those items contained on the sheet labeled Exhibit A. . . ." Aff. [29-1]. When officers executed the search warrant for Manning's residence, they found a few loose Oxycodone tablets in Manning's bedroom, a Glock model 23 handgun in a laundry basket, and a small safe in Manning's mother's room. Chassity Manning, Manning's mother, said that the safe belonged to her daughter but that her son was currently using it. She claimed her son had hidden it in her room because he was having friends over that he did not trust. The mother did not know the combination to the safe, and Manning refused to provide it. Agents breached the safe and located $1,570.00 in U.S. currency, a large bag of blue tablets, and marijuana.

On November 9, 2023, the United States Customs and Border Protecting Laboratory analysis returned with an official count of 1,406 pills containing fentanyl. These tablets found in the safe were blue in color and matched the tablets seen during the earlier drug transaction at Corner Market. On December 13, 2023, a Grand Jury returned an indictment charging Manning with knowingly and intentionally possessing with intent to distribute a mixture or substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Indictment [14].

On April 30, 2024, Manning filed a Motion to Suppress seeking suppression of the evidence recovered from the safe. Manning claims that the breach of the safe violates his Fourth Amendment rights because the search warrant lacked particularity by failing to mention the word "safe," and that the officers were operating outside of the scope of the search warrant when they breached the safe. He also argues that, because the word "safe" was not included in the search warrant, the officers should have seized the safe, applied for an additional search warrant for the safe, and only breached the safe if that search warrant was issued. The Government filed a Response to the Motion arguing that Manning lacked standing, that he failed to meet his burden of proof on the Motion, and that the breach of the safe was lawful because it did not exceed the scope of the validly issued search warrant.

## II.  DISCUSSION

The Fourth Amendment of the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. When a defendant's Fourth Amendment rights are violated, one of the ways in which they may seek relief is by filing a motion to suppress. *United States v. Leon*, 468 U.S. 897, 906 (1984). A motion to suppress, if granted, triggers the application of the exclusionary rule—the judicially created remedy for a Fourth

Amendment violation—which prohibits the government "from introducing evidence obtained by way of a Fourth Amendment violation." *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir. 2019) (quoting *Davis v. United States*, 564 U.S. 229, 231 (2011)).

The exclusionary rule was created to "safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (quoting *Leon*, 468 U.S. at 906). The Supreme Court has cautioned that the exclusionary rule has significant social costs and should only be applied when the benefits of deterring deliberate, reckless, or grossly negligent conduct of government actors outweighs the social costs of the exclusion of the evidence. *Davis*, 564 U.S. at 295. "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Leon*, 468 U.S. at 906.

**Standing**

Regarding a motion to suppress, "[t]he party seeking suppression 'has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights.'" *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)). To litigate a motion to suppress regarding a Fourth Amendment violation, a defendant must show that "his *own* Fourth Amendment

rights [were] infringed upon by the search [or] seizure which he seeks to challenge." *Byrd v. United States*, 584 U.S. 395, 403 (2018) (emphasis added) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)). A defendant can establish that his Fourth Amendment rights have been infringed upon by establishing that the government action violated a "reasonable expectation of privacy . . . in the place searched." *Id.* at 404. Manning must prove that he had a reasonable expectation of privacy in the safe that was searched for him to have standing to bring this motion to suppress. *See id.*

A defendant's "expectation must be 'personal[]' and 'reasonable,' and it must have a 'source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *United States v. Hernandez*, 647 F.3d 216, 219 (alteration in original) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). In assessing whether a reasonable expectation of privacy exists, the Fifth Circuit examines several factors including:

> whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, [and] whether he took normal precautions to maintain privacy and whether he was legitimately on the premises.

*United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. 1981).

In other words, a defendant's standing for a Fourth Amendment claim "depends on 1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized and 2)

whether that expectation of privacy is one which society would recognize as [objectively] reasonable." *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990). Manning did have a subjective expectation of privacy in the safe because he was the only one who knew the combination to unlock it, and he had allegedly hidden it in a closet so that his friends "that he did not trust" would not have access to it. Additionally, this expectation of privacy is one that society would objectively recognize as reasonable because a safe is a container primarily for keeping things private and secure.

The Government asserts that statements from the Defendant and his mother show that he does not have standing regarding the safe because his sister was the original owner of the safe. However, "[s]tanding does not require an ownership interest in the invaded area . . . ." *Hernandez*, 647 F.3d at 219. Manning was the person using the safe at the time and was the only person who knew the combination. Even if Manning was only borrowing the safe for a period of time, the Court finds that he has standing regarding this Fourth Amendment claim because he had a reasonable expectation of privacy in the contents of the safe.

**Valid Search Warrant**

When deciding if a search warrant provides sufficient particularity regarding the places to be searched and the items to be seized, Fifth Circuit courts must "ask whether the description in the warrant would permit an executing officer to reasonably know what items are to be seized" during the search. *United States v. Van Meter*, 280 F. App'x 394, 396 (2008) (quoting *United States v. Shugart*, 117 F.3d

838, 845 (5th Cir. 1997)). When a residence is being searched pursuant to a validly issued search warrant, any container on the premises may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant. *United States v. GIWA*, 831 F.2d 538, 543-44 (5th Cir. 1987) (holding that a warrant authorizing search for credit cards, financial records, and personal identification used in the fraudulent obtaining and use of credit cards allowed for search of travel bag because it was clear that evidence listed in warrant could be found inside).

Manning argues that the search warrant authorizing the search of his residence does not explicitly mention the word "safe" within the list of items to be seized during the search of his residence, so the officers exceeded the scope of the warrant when they breached the safe. Manning further argues that, because the word "safe" is not included within the list of items in Exhibit A, the officers should have obtained a separate search warrant allowing them to breach the safe.

The government agrees that the word "safe" is not explicitly mentioned within the contents of the search warrant, but instead argues that it is within the scope of the search warrant that authorizes officers to search for "Substances in violation of the Mississippi Uniform Controlled Substances Act of 1972 Annotated, more specifically described as cocaine, methamphetamine, heroin, fentanyl, drug paraphernalia, illicit contraband, weapons, U.S. currency, drug ledgers, documents, articles of constructive possession, and those items contained on the sheet labeled Exhibit A. . . ."

The Supreme Court has held that when law enforcement officers "have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a search warrant . . . ," a defendant's property may be seized until a separate search warrant is issued. *United States v. Place*, 462 U.S. 696, 701 (1983). However, if a container is mentioned within or falls under the original validly issued search warrant, officers may open a container that they reasonably believe holds the evidence listed within that search warrant. *See GIWA*, 831 F.2d at 543-44. Additionally, searches conducted pursuant to a valid, issued warrant are generally reasonable, unless the warrant is so facially lacking facts and particularity that the police knew or should have known that the warrant was invalid. *See United States v. Leon*, 468 U.S. 897, 922 (1984). It was reasonable for the officers to believe that evidence of this sort and possibly other evidence mentioned within the search warrant, like drug paraphernalia, weapons, U.S. currency, etc., could be found within the safe. S*ee e.g., GIWA*, 831 F.2d at 543-44.

At the time that the safe was discovered, Hancock County Narcotics Agents were searching Manning's residence pursuant to a validly issued warrant that had been issued by a neutral and detached magistrate judge based on a determination that there was sufficient probable cause to conduct the search.  While searching, they found the safe and believed it would contain items that were to be seized according to the affidavit for the search warrant.  In the Court's opinion it was reasonable for the officers conducting the search of Manning's residence to believe that the safe held the very evidence listed within that search warrant. Particularly in view of the

comments made by Manning's mother during the search; that her son had hidden the safe in her room because he was having friends over that he did not trust.

**Good-Faith Exception**

Alternatively, the Court finds that the exclusionary rule does not apply in this case because the officers breached the safe in good faith. The good-faith exception to the application of the exclusionary rule is commonly applied when law enforcement officers have conducted a search pursuant to a valid search warrant issued by a neutral and detached magistrate judge. *See United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (quoting *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997)). The good-faith exception applies unless one of the following four factors exists:

> (1) [t]he issuing-judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the issuing-judge "wholly abandoned his judicial role" in such a manner that "no reasonably well trained officer should rely on the warrant"; (3) the underlying affidavit is "bare bones" (so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"); or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

*Gibbs*, 421 F.3d at 358 (5th Cir. 2005) (quoting *Leon*, 468 U.S. at 923). Furthermore, absent judicial misconduct "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* (quoting *Leon*, 468 U.S. at 926).

During the lawful search of Manning's residence, officers found the safe, and attempted to open it several times with combinations given to them by Manning's

mother. They took the safe outside to breach it once it was clear that they would not be able to do so using a combination. The officers were operating in good faith because they believed that there was evidence inside of the safe aligning with the things particularly described within the affidavit for the search warrant. The officers were not reckless or grossly negligent because they reasonably believed that the safe contained contraband, fruits or instrumentalities of the crime, or other evidence. Because there was no judicial or police misconduct that would be sufficiently deterred by the exclusion of the items found in the safe, the exclusionary rule should not be applied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Willie Spence Manning, Jr.'s [29] Motion to Suppress is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 21st day of June, 2024.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE